UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Jose A. Rivera,
      Plaintiff,

     v.

Andrew Saul,
Commissioner of Social
Security,
      Defendant.

)
)
)
)
)
)
)
)
)
)
)

C.A. No. 18-cv-30019-MAP

**MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION FOR
JUDGMENT ON THE PLEADINGS AND DEFENDANT'S MOTION TO AFFIRM
THE COMMISSIONER'S DECISION**
(Dkt. Nos. 15 and 21)

July 31, 2020

PONSOR, U.S.D.J.

## I.  INTRODUCTION

This is an action for judicial review of a final

decision by the Commissioner of Social Security, Andrew

Saul ("Defendant"), regarding Plaintiff's entitlement to

Social Security Disability and Supplemental Security Income

Disability benefits ("SSDI").[1]  Jurisdiction is invoked

---

[1] The court has replaced the original Defendant, Nancy A. Berryhill, the Acting Commissioner, with the current Commissioner as the formal defendant.

pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).
Complaint, Dkt. 1 at ¶ 1.  Based on the decision of an
Administrative Law Judge (ALJ"), Defendant found Plaintiff
not disabled under the Social Security Act and therefore
not entitled to benefits.  Plaintiff contends that this
decision improperly ignored the opinions of both his
treating physician and his surgeon and was not supported by
substantial evidence.  His motion for judgment on the
pleadings seeks a remand.  Dkt. 15.  Defendant has filed a
motion to affirm the Commissioner's decision.  Dkt. 21.

On May 27, 2020, the court preliminarily issued its
rulings, allowing Plaintiff's motion and denying
Defendant's, withholding entry of judgment, and promising a
follow-up memorandum detailing the reasons for its rulings.
Dkt. 24.  This is that memorandum.

As will be seen below, the ALJ's decision failed to
respect the well-established standard governing
consideration of the opinions of treating physicians. These
opinions are "controlling if [they are] 'well supported by
medically acceptable clinical and laboratory diagnostic
techniques and [are] not inconsistent with the other
substantial evidence'" in the record.  Purdy v. Berryhill,

2

887 F.3d 7, 13 (1st Cir. 2018), quoting 20 C.F.R. §
416.927(c)(2).

Here, the opinions of both Plaintiff's surgeon and his
primary care physician unequivocally supported a finding of
disability.  These opinions were emphatic and consistent
with the substantial evidence in the record.  Defendant's
cherry-picked references to supposedly contrary evidence
were insubstantial or irrelevant.  Moreover, the court's
task here was complicated by the gross inadequacies of
Defendant's legal memorandum, which distorted or entirely
omitted crucial medical evidence supporting Plaintiff.

For these reasons, set forth in detail below,
Plaintiff's motion has been allowed, and Defendant's motion
has been denied.  Moreover, because no factual issues in
this case require further inquiry, and this is the unusual
case where "where the proof of disability is overwhelming,"
the court will proceed to enter judgment for Plaintiff
directly and immediately, without any remand for further
proceedings.  Sacilowski v. Saul, 959 F.3d 431, 433 (1st
Cir. 2020), citing Seavey v. Barnhart, 276 F.3d 1, 11 (1st
Cir. 2001).

Finally, based on the misleading content of Defendant's memorandum, the court will order Defendant's counsel to submit a memorandum by August 14, 2020, showing cause why the court should not impose sanctions upon him for unprofessional conduct.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff originally filed his claim over six years ago, on February 21, 2014, contending that he was disabled based on depression, anxiety, back pain, arthritis, and insomnia.  On May 8, 2014, his claim was initially denied. Dkt. 14, Administrative Record of Social Security Proceedings ("R."), 453-54.  Following retention of counsel, a request for reconsideration of this decision was filed and denied on December 29, 2014.  R. 461-63. Plaintiff appeared before an ALJ on April 14, 2016 seeking a review and reversal of the administrative decision.  On December 23, 2016, the ALJ issued his opinion denying Plaintiff benefits. R. 228-56.  A request for review before the Appeals Council was denied on December 5, 2017, and on February 4, 2018, this lawsuit was filed.  R. 10.

The factual summary below will focus entirely on the issue of Plaintiff's back pain and associated limitations.

4

While Plaintiff's original claim included other impairments, pain and limitations related to Plaintiff's back impairment are the only bases for a finding of disability pressed in this lawsuit.

Plaintiff was forty years old at the time of his hearing before the ALJ in April of 2016.  He had obtained a seventh-grade education in Puerto Rico and was fluent in Spanish but unable to read, write, or speak in English.  He had worked in construction and as a park laborer.  R. 284-96, 305-07.  For purposes of this memorandum, the current asserted date of onset of disability is February 12, 2014.  Plaintiff has not worked since February 20, 2014.  R. 237.

The record is undisputed that Plaintiff has suffered for many years from severe back pain.  As of April 4, 2013, for example, according to the report of Willard Brown, DO, Plaintiff had been in pain for about three months, had problems getting dressed and bathing, had a thirty percent restriction of lumbar flexion, and exhibited paraspinal myofascial pain with movement.  On a pain scale of 0-10, Plaintiff reported a level of "at least a 7."  R. 663.  Office notes of Plaintiff's Primary Care Physician, Dr. Kenneth Aquilino, confirm a diagnosis of lumbar

degenerative disc disease as of January 31, 2014.  R. 698-99.

On March 6, 2014, Plaintiff presented at the Baystate Health Pain Management Center following a referral by Dr. Aquilino.  At this time, Plaintiff was seen by Dr. Muhammad Isa and reported a "band like pain in the lower lumbar area with intensity of 9/10."  R. 729.  An X-ray confirmed degenerative disc changes at L5-S1.  Id.  Plaintiff's gait at the time of the exam was observed to be "antalgic," meaning that his walking was distorted to reduce pain.  His lumbar spine was tender to palpate and the straight leg raising test bilaterally reproduced the pain.  Dr. Isa diagnosed Plaintiff as suffering from "Bilateral lumbar facet arthropathy" and recommended a bilateral facet joint injection with steroids, which Plaintiff agreed to undergo. R. 730.

Plaintiff was given the steroid injection on May 5, 2014 (R. 727), and on June 6, 2014, he appeared for a follow-up pain consultation with Dr. Isa and reported "no benefit" from the steroid injection.  R. 724.  Pain persisted at the 8/10 level, and Plaintiff reported "significant discomfort with taking shower, using toilet,

6

and getting in and getting out of bed." <u>Id.</u>  His gait
remained antalgic, and he walked with a cane. <u>Id.</u>  Dr.
Isa's impression at this time was that Plaintiff suffered
from "Degenerative disease of lumbosacral spine with
possible component of lumbar radiculitis and myofascial
pain syndrome." <u>Id.</u>  He was referred for an MRI.  R. 725.

Defendant's summary of Dr. Isa's June 6, 2014 exam
omits the kernel and highlights the husk. Although
Plaintiff's problem was located in his lumbar region,
Defendant's memo focuses on the straight leg testing
(which, in contrast to the March 6 exam, was reported as
negative at this time), the neurological exam of the lower
extremities, and the absence of sensory deficits. While
these details have some relevance, no mention is made of
Plaintiff's reports of pain, his prior steroid injection,
the recommendation of an MRI, or the doctor's clinical
impression.

In one detail Defendant's memorandum is flatly
misleading, stating that Dr. Isa "counseled [Plaintiff]
<u>against</u> bed rest." Dkt. 22 at (unnumbered) 4 (emphasis in
original).  What the doctor's note really said was that
Plaintiff was "counseled against bed rest, especially for

more than four days." R. 725. This kind of unprofessional "spin" arises repeatedly in Defendant's memorandum. It is repeated a second time when, in reporting on Dr. Isa's follow-up consultation on July 11, 2014, Defendant's memo again asserts that Dr. Isa "counseled Plaintiff against bed rest." Dkt. 22 at (unnumbered) 4 (emphasis in original). In fact, the doctor's note of July 11, 2014, states that he counseled Plaintiff "against prolonged bed rest, especially for more than 4 days." R. 723. Distortions like this fall beneath the ethical standard applicable to an attorney representing the government. Graver lapses are described below.

In fact, during the July 11, 2014, consultation with Dr. Isa, Plaintiff reported that his symptoms were persisting and that his pain was at a level of eight on a scale of ten. The MRI "revealed diffuse degenerative disc changes with minimal disk protrusion at L4-L5 with mild spinal stenosis at L4-L5 level." R. 722.

Plaintiff sought treatment for his pain at the Holyoke Medical Center Emergency Room ("ER") on August 6, complaining of severe chronic back pain, worsened by walking or bending over, and "[n]ot relieved by anything."

8

R. 1168.  The medical notes indicated that Plaintiff had
been seen "multiple times for back pain" and given
prescriptions for codeine, Tramadol, Percocet, and Robaxin.
Id.  The report of the ER contained some inconsistencies
noting as to the back "Normal inspection.  No tenderness.
Painless ROM," while at the same time including the
clinical impression of "[c]hronic back pain," instructions
to limit lifting and strenuous activity, and a prescription
for Ultram, a brand name for Tramadol, an opioid
painkiller.  R. 1169-1170.  On August 27, 2014, Plaintiff
again appeared at the ER complaining of back pain, "noted
to be sharp."  R. 1166.  Findings and conclusions were
essentially the same as the visit three weeks earlier.

On September 4, 2014 Plaintiff was admitted to Baystate
Medical Center and discharged on September 12 following
surgery described as an "anterior fusion of L5-S1."  R.
1031.  Following the operation, on October 2, 2014 the
surgeon, Dr. Marc Linson, reported that Plaintiff was
unable to work.  R. 1027.  On October 13, 2014, Dr.
Aquilino confirmed that Plaintiff could not return to work
until further notice, adding that Plaintiff's "recovery is
still suspect at present and he may never recover

completely to a point where he can return to unrestricted, full-time work." R. 1048. On November 5, 2014, two months following the surgery, Dr. Linson reiterated that Plaintiff "is still recuperating and is unable to work until further notice." R. 1049.

Very surprisingly, Defendant's memorandum entirely omits any reference to Plaintiff's lumbar fusion surgery, the most significant event in Plaintiff's medical history, or to his doctors' repeated reports that Plaintiff was unable to work as a result. Defendant's memorandum, which purports to set forth Plaintiff's history in some detail, simply skips from his August 6, 2014 emergency room visit to a November 18, 2014 report of a consultation with his primary care physician, Dr. Kenneth Aquilino. Dkt. 22 at (unnumbered) 4. It is hard to see how the complete omission of any mention of Plaintiff's surgery was inadvertent. The fusion operation leaps out of the medical record. Before deciding whether to impose sanctions for this apparent attempt to conceal essential evidence, the court will give counsel a chance to explain.

In fact, the medical records in the months following Plaintiff's surgery amply confirmed his ongoing pain and

disability, as well as his inability to work.  As of November 18, 2014, Dr. Aquilino stated in a letter that Plaintiff's "recovery so far has not gone as planned and he is still presently experiencing significant pain and discomfort in his lower back even though it has now been over two months since his surgery."  R. 1063.  Pain medications by that time had not proven effective and Aquilino wrote that "there is a good possibility that he may never physically recover completely to a point where he can return to unrestricted, full-time work."  <u>Id.</u> Plaintiff was advised at that time to "stay off work completely until his next follow up appointment with Dr. Marc Linson."  <u>Id.</u>

A year later, on September 29. 2015, Plaintiff's condition had still not improved.  At this time, Dr. Aquilino wrote that, "we can safely assume that [Plaintiff's] surgery was not successful at all in helping address his back problems and . . . he may never ever be able to physically recover completely to a point where he can return to unrestricted and full-time work."  R. 1286. Dr. Aquilino advised Plaintiff at this time to "continue to stay off work completely ...."  <u>Id.</u>

Six months later, On March 21, 2016, Dr. Linson opined that Plaintiff was unable to stand or walk (using a walker) more than two hours or sit more than two hours "with breaks." R. 1343. Plaintiff needed to lie down at unpredictable intervals at least four times a day, and his impairments would have him absent from work "more than four days a month." R. 1343-44. Dr. Linson's conclusion based on all this was unequivocal: Plaintiff "cannot work." R. 1344. Significantly, Dr. Linson's note is dated less than a month prior to Plaintiff's hearing before the ALJ on April 14, 2016.

As part of his treatment, Plaintiff began going to physical therapy treatments in November of 2016 at Holyoke Medical Center. R. 257-60. The findings from these treatments firmly supported Plaintiff's claims of disability. During an exam on November 30, 2016, Plaintiff's gait was described as comprising "short choppy steps with flexed posture," and his posture as "flexed posture, slight knee flexion in standing, trunk kyphosis." R. 257. Kyphosis is a condition in which there is an abnormal convex curvature of the spine resulting in a bulge in the upper back. The range of motion in Plaintiff's trunk

was described as seventy-five percent limited in extension and fifty percent limited in flexion.  Plaintiff reported pain when lifting his child, bending, and lifting groceries, and he stated that "prolonged community ambulation is the most painful activity."  Id.  By this time Plaintiff had been taking oxycodone for over a year and a half.  Id.

During a few physical therapy sessions during December 2016, Plaintiff showed some improvement, stating on December 5, 2016, that he felt "slightly better" and that he could do mat exercises "without additional pain."  R. 260.  By December 13, 2016, he could tolerate more standing exercises and his dynamic and static balance was described as "excellent."  R. 262.  Nevertheless, he had "significant tightness" in the lumbar area which impaired his gait.  He had no increase in pain after manual therapy and exercise. Id.  According to the therapy reports of December 19 and 21, 2016, Plaintiff continued to improve and tolerated "most of the exercises without pain," and saw improvements in his balance, but his low back soreness was unchanged. It "did not get worse or better."  R. 267.

Despite these indications of possible improvement, Dr. Linson reported on December 21, 2016 that Plaintiff was "still uncomfortable with pain in his back and legs," and with one-half of normal motion. R. 372.  The doctor observed that "[i]t is certainly possible this may be permanent."  He stated that he intended to "begin weaning his pain medicine over six months."  Id.  The reports of the physical therapy and Dr. Linson all predated the issuance of the ALJ's opinion on December 23, 2016, and, obviously, the Appeals Council's denial of review on December 15, 2017.

At the hearing before the ALJ on April 14, 2016, Plaintiff testified that he suffered pain in his back traveling down both legs.  R. 296.  The pain was "pretty strong" and made his legs shaky.  Id.  The pain had worsened since his 2014 surgery and caused him to go from using just a cane to using a walker. R. 297.  Physical therapy did not help; medication eased the pain for 4-6 hours but left him tired and sleepy.  R. 297-98.  He was unable to sit comfortably for more than fifteen to twenty minutes or stand more than twenty to twenty-five minutes. R. 298-99. He could not walk for any distance because his

14

legs got shaky, and his inability to sleep left him "very,
very exhausted."  R. 299.

Also testifying at the hearing before the ALJ was
Tamara Prairie, a vocational expert.  Among other things,
she testified that an individual who was "off task at least
15 percent of the time over and above normal breaks" would
be unemployable on a full-time basis.  R. 311.  Similarly,
if an individual arrived late, left early, or was absent
three times a month or more, his conduct would not be
tolerated by an employer.  Id.  As noted above, Plaintiff's
surgeon, Dr. Linson, shortly before the hearing,
specifically confirmed that Plaintiff would be absent from
work at least four times a month.

The conclusions of Dr. Aquilino and Dr. Linson emerged
from their multi-year treatment of Plaintiff, from
diagnostic procedures such as X-rays and MRIs, from the
prescription of powerful opioid-based pain medications such
as Tramadol and Oxycodone, from their observation of the
effect of the steroid injection, and from numerous in-
person examinations over a substantial time.  Their
findings directly contradicted the opinion of the non-
examining state agency physician, Dr. Ludmila Perel, whose

15

evaluation emerged solely from a review of the records and who concluded that Plaintiff could work.

The ALJ's decision was that Plaintiff could work at a sedentary level.  R. 246.  The decision assigned "little weight" to -- and in fact essentially disregarded -- the opinions of Dr. Aquilino and Dr. Linson.  R. 243.  While the rationale for this conclusion is not entirely clear, four reasons can be inferred from the ALJ's memorandum.

First, the ALJ was skeptical because the doctors' opinions supposedly "were solicited to support this application ...."  Id.  As a factual matter, this is simply false.  Both doctors were retained primarily to treat Plaintiff's medical condition.  That their opinions were also offered to support Plaintiff's disability claim does not in any way undermine their status as long-term treating clinicians, whose opinions are either controlling or in any event entitled to substantial weight.  Purdy, 887 F.3d at 13.  Beyond this, the First Circuit has made it clear for at least three decades that medical evaluations cannot be discredited simply based on their "timing and impetus" since it is a "quite common procedure to obtain further medical reports, after a claim is filed ...."  Gonzalez

*Perez v. Sec'y of Health & Human Servs.*, 812 F.2d 747, 749 (1st Cir. 1987).

Second, the ALJ faulted the doctors even for offering their opinions that Plaintiff could not work, since an "opinion concluding disability is reserved for the Commissioner." R. 243. At least in the circumstances of this case, this criticism lacks merit. While it is certainly true that the ultimate decision regarding disability rests with the Commissioner, treating physicians are very often the best people to offer opinions as to their patients' capacity for work. Depending on various factors, the Commissioner may accept or, in appropriate circumstances, reject these opinions in whole or in part in making the ultimate decision regarding an applicant's entitlement to benefits. The mere fact that medical opinions state that the applicant cannot work, however, is no ground to dismiss them out of hand.

Third, the ALJ cited one medical consultation, on December 9, 2015, where, according to the ALJ, Dr. Aquilino "noted that [Plaintiff] continued to have low back pain but he was now able to manage his back pains better with medication and activity restriction." R. 243. The actual

medical report of December 9, 2015, however, is significantly different.  The report states that Plaintiff "continues to complain of increased low back pain but states he is now able to manage his back pain better with medications and activity (restrictions)."  R. 1289 (emphasis suppled).  Later, the same report notes the fact that Plaintiff took medication daily for his lumbar problems and that he required "[r]einforced activity and weight lifting restrictions."  R. 1291-92 (emphasis supplied).

Apart from fudging the actual December 9, 2015 report -- by omitting, for example, the word "increased" -- the ALJ's citation of that report ignored the context of multiple repeated appointments with Dr Aquilino and Dr. Linson that confirmed the disabling nature of Plaintiff's impairment. A review of the entire medical record makes this clear.  Three months later, on March 11, 2016, Dr. Aquilino again saw Plaintiff, at which time he once more reported increased low back pain and his attempts to manage it.  R. 1357.  The examination reveals increased tenderness to palpation over the lumbosacral spine.  Dr. Aquilino makes the same findings in June, September, and December of

2016.  R. 269-283.  During this time, in addition to
medication prescribed by Dr. Aquilino, Plaintiff was also
taking oxycodone, which was being prescribed and managed by
Dr. Linson.  R. 268, 274.

During all of 2016, Dr. Linson's examinations of
Plaintiff were entirely consistent with Dr. Aquilino's.  On
March 21, 2016, Dr. Linson noted Plaintiff's low back pain
and use of a walker, ordered a CT scan, and stated flatly
that Plaintiff was "unable to work."  R. 369.  On September
14, 2016, Dr. Linson noted Plaintiff's persistent pain and
the limitation to "1/2 of normal back motion."  R. 371.  By
December 21, 2016, Dr. Linson essentially found no change
and noted that, with over two years having passed since the
surgery, it was "certainly possible this may be permanent."
R. 372.

The fourth, and last, piece of evidence cited by the
ALJ in support of his decision to give little weight to the
opinions of Dr. Aquilino and Dr. Linson was a series of
medical records produced by City Clinic, where Plaintiff
was going for mental health counseling during 2013 and
2014.  Defendant's memorandum characterizes the ALJ's
citation of these records, referring to Exhibits 8F and 9F,

as a "scrivener's error."  Dkt. 22 at (unnumbered) 12, n.
4.  According to Defendant's counsel, the ALJ meant to
refer to records in a different exhibit, which, counsel
suggests, confirmed that Plaintiff's gait was "negative for
abnormalities."  <u>Id</u>.

This assertion is misleading on so many levels it is
hard to know where to start.  First, the medical record
does not say that Plaintiff's gait was "negative for
abnormalities," as counsel's memorandum asserts.  These
counseling records state, under the heading "Review of
Systems" as follows: "Neuro – no dizziness, headaches or
changes in gait/sensation or abnormal movements."  <u>See,
e.g.</u>, R. 747.  There is obviously a significant difference
between someone whose gait is "negative for abnormalities,"
as Defendant's memorandum suggests, and someone who
exhibits no <u>changes</u> in his gait or abnormal <u>movements</u>. This
tactic is precisely the kind of deceptive spin Defendant's
counsel employed, as noted above, when he omitted the
reference to Plaintiff's report of "increased" back pain.
Fairly viewed, the records just do not say what Defendant's
counsel says they say.

More importantly, these City Clinic records are psychiatry notes, where the observations of general movement and gait are made in the context of counseling sessions.  These entries, repeated in reports for at least twenty counseling sessions during 2013 and 2014 are boilerplate and identical, except that the entries sometimes also note the absence of skin rashes. Descriptions of gait or "abnormal movements" in psychiatry notes will be appropriate for that medical specialty and signify something different from descriptions of gait and movement contained in the records of a physical therapist.

This difference of perspective is, in fact, confirmed in the more far more relevant and more timely 2016 records of Plaintiff's physical therapy.  As noted, his physical therapist observed at that time Plaintiff's "choppy" steps, his knee flexion in standing, his trunk kyphosis, and a range of motion limited fifty to seventy-five percent. Supra at 12.

It is true that some of the evidence cited by Plaintiff now in support of a finding of disability was generated during 2016, after the April 14, 2016, ALJ hearing, but before the issuance of his opinion on December 23, 2016.

The issue, however (as Defendant concedes at page 17 of his memo), is whether Plaintiff was disabled between February 20, 2014 and December 23, 2016.  The overwhelming evidence in the record, particularly the unequivocal and well supported opinions of Dr. Aquilino and Dr. Linson, appeared in the record well before April of 2016.  The additional evidence cited by Plaintiff, to the extent it was even necessary to require a favorable finding, appeared prior to December 23, 2016.  No justification exists for ignoring this evidence.

In sum, the reasons offered by the ALJ to reject the unusually clear and emphatic opinions of Plaintiff's primary treating physician and his surgeon were inadequate both factually and as a matter of law.  Very significantly, as noted above, the record exhibits a striking fit between the objectively supported opinion of Dr. Linson to the effect that Plaintiff would be absent a minimum of four days a month if he tried to work, and the sworn testimony of the vocational expert Tamara Prairie to the effect that absences of three days or more a month would not be tolerated by an employer.  Under these circumstances, a

decision favoring disability should have issued following
the hearing.

## CONCLUSION

For the foregoing reasons, the court has allowed
Plaintiff's Motion for Judgment on the Pleadings (Dkt. 15)
and denied Defendant's Motion to Affirm the Decision of the
Commissioner (Dkt. 21).  Based on the overwhelming evidence
in the case, which establishes disability without any
doubt, a remand for further proceedings is unnecessary.
Sacilowski, 959 F.3d at 441.  The clerk is therefore hereby
ordered to enter judgment for Plaintiff awarding benefits.

Finally, as noted several times above, Defendant's
memorandum contains disturbing omissions and distortions of
the record.  The failure even to mention Plaintiff's
surgery in Defendant's summary of the facts seems
particularly egregious, but other problems are noted that
counsel may wish to explain.  There may be some
justification the court is overlooking.  Before addressing
these issues, therefore, the court will give counsel for
Defendant until August 14, 2020 to submit a memorandum
showing cause why sanctions should not be imposed.

It is so ordered.

_/s/ Michael A. Ponsor_____
MICHAEL A. PONSOR
U.S. DISTRICT JUDGE